Good morning, Your Honor. May it please the Court. I am Ian Weinstein, appearing on behalf of Mr. Daniel Alarcon Sanchez. This case presents the open question of whether a foreign national may be prosecuted in the courts of the United States for a conspiracy to ship drugs from Colombia to Australia that involved neither Americans nor touched American interests. Neither the statute, the Maritime Drug Law Enforcement Act, nor the Constitution permits this exercise of judicial authority. Are you familiar with Prado? I am, Your Honor, yes. So this would extend the medleya jurisdiction to someone not on the boat. That is your argument, correct? That is correct, Your Honor, yes. We argue first that the statute requires, that the operative language requires that the person prosecuted be on board the vessel. I grant that U.S. v. Prado casts doubt on whether those words are jurisdictional or elemental. But it is undisputed that Mr. Sanchez was not on board the vessel. Indeed, he never left Colombia. I submit to the Court the statute's language is best understood as imposing a limit, as does the Define and Punish Clause in this case, based on the location of the vessel. I do not understand Prado. The statutory language on board is jurisdictional, as the concurrence suggested in Prado, as Your Honor is well aware, or it is elemental. I submit in either case, in either case, that requirement for prosecuting Mr. Sanchez was not met here. I also note crimes on the high seas are, of course, particularly regulated by the Constitution, which repeats the locational language. It requires or it permits Congress to define and punish felonies committed on the high seas. I submit that whether it is understood analytically as jurisdictional or elemental, there are very good reasons for such limitations enforceable in a court of law and not left merely to the executive in the exercise of comity in international affairs. I grant, as Prado notes, that there is a significant element for the executive in this. Nonetheless, it has always been the law of this circuit and indeed the Supreme Court that the courts also have a role in limiting the contours of extraterritorial jurisdiction. So, although the executive has a role to play in the government's reach of the Maritime Drug Law Enforcement Act through the invocation of conspiracy and the Pinkerton Doctrine, is a backdoor to unlimited or, as the cases discuss it, universal jurisdiction that would violate the define and punish clause. There is, of course, a narrower reading of the statute that would save the court from those constitutional thickets that, of course, is our statutory argument. A lot of your arguments were considered and rejected by the D.C. Circuit in Ballestas. Why should we not adopt its reasoning? Your Honor, it is our position in the briefs that Ballestas or Ballestas, thank you, Your Honor, is simply wrongly decided and this court should not follow it. In what way do you think it's wrong? Where do you think it goes off course? Your Honor, I would submit that the fundamental error, as I hope we have developed, is the confusion between a doctrine of complicity and a doctrine of jurisdiction and that the case, unfortunately, merges those two ideas and does not separate them out and that is the key analytic error. And as I note, if conspiracy is used in that way, it is a backdoor to universal jurisdiction, which has long been limited only to a very, very select set of crimes. It has never been the law that the narcotics laws may be enforced anywhere, at any time, upon any party. But I'm trying to understand why that should be our ruling. To the extent that a vessel over which there is United States jurisdiction by virtue of it being a stateless vessel on the high seas is engaged in committing a crime, why aren't those who perpetrate it, wherever they are, subject to U.S. jurisdiction by virtue of us having jurisdiction over the boat that's being used for that purpose, why would that not be a proper way to construe the statute? First, as I have argued, the language of the statute limits its reach to those on board the vessel. What language are you referring to now so that we're clear? The statute begins by... You have to speak into the microphone, Carol. I'm sorry, Your Honor. I just reached for the statutory addendum to our brief. And I note under... I apologize, Your Honor. It's in 70503, I'm at D of the statutory appendix, if that's helpful. It sets out liability. And the language begins, prohibitions of the title, an individual may not knowingly possess with intention to manufacture... I have 70503 before me now. Which subsection are you in? Thank you, Your Honor. I'm in subsection A, prohibitions. Right, okay. Now go ahead and tell me what you think it is. Yes, and there is that introductory paragraph, prohibitions of any individual... Why long have you covered this vessel, an individual may not knowingly or intentionally? Right, a controlled substance on board, right? That's the language to which I point, that it tells us that you may not knowingly or intentionally manufacture, distribute, or export, that the statute gives the government ample authority to prosecute all those people found on board the vessel, whether they have direct liability or accomplice liability, and that's the role of the accomplice section of the statute. Someone is engaged in selling drugs here in New York, on U.S. soil. The person who sold him the drugs in another location with that intent, with the collusive intent that it be sold in New York, is subject to U.S. jurisdiction. On the principle discussed in Ballestas that aiding and abetting or conspiratorial liability is coterminous with that of the principle here. Why shouldn't that be how we read this? Thank you, Your Honor. The coterminous language, as we discussed in our reply brief, is language found in United States v. Ali. Now, United States v. Ali is a case in which there were two theories of what I'm going to label as inchoate liability, an aiding and abetting theory and a conspiracy theory. Now, in Ali, this court said that while the statute permitted liability on the aiding and abetting theory, it did not permit aiding and abetting on the conspiracy theory. We argued to the court that Ali is ample illustration that while it is generally coterminous, there are cases that are exceptions. Your Honor, of course, offered a hypothetical that illustrated that in the main run of, in the minor run of cases, there is jurisdiction, and it is proper, that this case presents the very narrow and particular question of whether a foreign national who never left Colombia may be prosecuted for a crime that has no connection to the United States, that was a drug deal or a drug transaction going from Colombia to Australia. So while I agree with the language, the rule from Ali is that while it is generally coterminous, Ali also tells us that there are particular circumstances in which the court must distinguish between, in that case, aiding and abetting and conspiracy, I submit to the court that on this statute, it does not reach the conspiracy theory of liability. Your time has expired, but you reserve one minute for rebuttal. We'll hear from attorney for Mr. Diaz. Thank you, Your Honor. Good morning, counsel. Good morning. May it please the court, my name is Marlon Curtin, and I represent Mr. Salinas Diaz. It's our position, Your Honor, that the MDLEA is beyond Congress' authority to legislate under Article I, Section 8, Clause 10 of the United States Constitution. If we don't agree with you, could you go on? Do you have other arguments to make? Well, my briefing is really dedicated to the broader constitutional issue, because in the Prado case, although that was basically an as-applied analysis, the Prado case recognizes that there is a legal analysis that deals with Congress' ability, generally, to legislate particular conduct involving foreigners involved in foreign conduct. It's our view, Your Honor, that the Law of the Seas Doctrine basically is... Two pro briefs in this case. I'm sorry? Judge Winter, did you say something? Yes, but I was speaking to a lost mark. Okay. Continue, Mr. Curtin. Yes, Your Honor. It's our view that the MDLEA, as it defines international drug trafficking, is not an offense of the law of nations as defined in the Constitution. The law of nations is really... The court can look at a number of factors in deciding what the law of nations is. Under the United Nations Law Against the Seas, piracy and human trafficking are areas in which any nation can interdict anyone and enforce laws against piracy and human trafficking. Also, under the International Criminal Court, issues of genocide and crimes against humanity can also be charged, essentially, by anyone and any nation. Counsel, do you concede that this was a stateless vessel? That's correct, Your Honor. The issues in Prado are very fact-specific. Well, this is also a stateless vessel, isn't it? That's correct. But the problem is, even though it's a stateless vessel, the persons on the boat are not stateless. And that's really the issue that we're arguing. The persons on the boat are citizens of particular countries. And what the MDLEA does is it punishes foreigners committing crimes in foreign jurisdictions against other foreigners and other foreign governments. And they're on the high seas in a stateless vessel. However, the individuals on the boat are not stateless. And the problem is, those persons are being charged in a United States court for violation of American laws. So the issues that... But your argument basically destroys the concept of universal jurisdiction over stateless crimes committed on stateless vessels. The argument that we made is that although the actual boat itself is stateless, does not belong to a particular country, is not claimed by a particular country, and the persons on board are not verifiably foreign nationals, they are the issue. The fact that these persons who are foreigners committing crimes on international waters are being charged in the United States. So if you look at some of the cases of the Supreme Court, they analyze whether or not laws of Congress essentially exceed the authority given to them by the Constitution. And it's our view, Your Honor, that this MDLEA exceeds the authority given to it to legislate and prosecute piracies and felonies on the high seas. Are you distinguishing between those foreign nationals who are on the boat and those who are on land? Or do you treat them each... I treat them each the same. The same. So it doesn't make a difference to you if they're on the boat where the drug crime is taking place. No, as long as they're foreign nationals engaged in crimes against foreigners and or foreign nations. That's really the issue. I'm missing something here, but is the logical conclusion of your argument that the United States can only define piracy as committed by United... and punish piracy as committed by United States nationals? No, no, Your Honor. Well, then what is the reach of our jurisdiction with respect to foreign nationals on stateless vessels? Under the MDLEA? Well, I understood you to be making a constitutional argument that there was no constitutional authority to legislate this far. Under the terms of the statute, anyone on board a covered vessel is prohibited from engaging in the prescribed conduct. And that's the issue. Right, but you just told us that you're not drawing a distinction between people on land and people on the ship. I'm just trying to understand your argument. Who do you think we can prosecute who smuggles drugs on vessels, stateless vessels on the high seas? Who can the United States prosecute? In our view, Your Honor, no one. Under the MDLEA, international drug trafficking is not an offense against the law of nations on the high seas as defined by the MDLEA. Congress can prosecute persons involved in piracy, human trafficking on the high seas, as can anyone else, any other nation. The argument is that Congress cannot prosecute those involved in international drug trafficking on the high seas in stateless vessels. Okay. Thank you. Thank you. You have reserved no time for rebuttal. Thank you. We'll hear from the government. Good morning, Your Honors, and may it please the court. My name is Jason Swergold, and I'm an assistant United States attorney in the Southern District of New York. I represent the government on appeal, and I represented the government before the district court. I want to start by just addressing a couple of the issues that were raised by Mr. Alarcon Sanchez's counsel. First of all, just to correct a factual issue, this is not a case that did not involve any Americans. There was actually an American citizen co-conspirator in New York making a payment to a confidential informant in furtherance of the conspiracy. That's an undisputed fact in this case, and I think it's important. That was to purchase the passports? That was to purchase the passports from an individual who was also arranging for the ship, one of the ultimate ships that they would use. In response to the court's questions about why the conspiracy provision does not also apply extraterritorially if the substantive offense under 70503 applies extraterritorially, I heard Mr. Alarcon Sanchez's counsel to argue that the language of the statute limits it to individuals on board vessels subject to the jurisdiction of the United States. First, I think that you have to read 70503, which is the substantive offense, and 70506, the conspiracy provision, together. And when you read those provisions together, it's clear that Congress's intent was that both provisions would apply extraterritorially even though 70506 doesn't contain the extraterritorial language. To do so would have been, to include that language would have just been redundant. It wouldn't have served really any purpose for conspiracy to only apply to the individuals on the boat who themselves are also in almost all circumstances guilty of the substantive offense. I would also note that there are other statutes where the conspiracy provision is in a separate section, and where there is some form of limitation in the substantive provision that doesn't appear in the conspiracy section, and this court has upheld United States jurisdiction. I'm thinking specifically of Title 21 United States Code Section 959 cases, which criminalizes using a transporting drugs on a airplane that's registered in the United States. The conspiracy provision is in 963. There is no extraterritorial language in the conspiracy provision. There is no limitation to being on board the plane in the conspiracy provision, but in United States v. EPSCAMP, this court upheld United States jurisdiction over such conduct for foreign nationals operating wholly in a foreign country, organizing a shipment of drugs from one foreign country to the other with no connection to the United States other than the plane they were using was registered in the United States, which is similar to a vessel subject to the jurisdiction of the United States. We think also I want to just point out that United States v. Ali, which is the piracy case from the D.C. Circuit, which addresses coterminous whether accomplice liability and conspiracy liability are also extraterritorial if the substantive offense is. Mr. Weinstein argued that Ali stands for the proposition that there are limits, but there's a key distinction in Ali. In Ali, the defendant was charged with conspiracy under Section 371, not a specific conspiracy statute as it related to piracy. And so there, what the court said was, piracy is certainly extraterritorial. We have to decide, though, whether under 371 we can apply conspiracy extraterritorially, and we have to look to the definition of piracy as it exists in international law. And under the uniform of the United Nations Convention on the Law of the Sea, piracy was defined to not include conspiracy. And so, therefore, the court said, well, under 371 then, which is a general conspiracy provision, we cannot extend it to piracy. That's not the case here. 70506 is a conspiracy provision in the MDLEA, just like, for example, 963 is a conspiracy provision within Title 21. There seems to be no dispute that the substantive offense is a valid grant of constitutional — is a valid grant under Congress's constitutional authority to define and punish felonies on the high seas. It makes perfect sense under both Congress's authority to criminalize conspiracies, as well as the Necessary and Proper Clause, to be able to punish land-based co-conspirators whose co-conspirators are violating the MDLEA by being on board a vessel subject to the jurisdiction of the United States. You make no distinction, like a previous counsel, between people on board when the vessel is stopped and people on shore at the same time. No, you make no distinction. There's no distinction with respect to whether or not the — whether or not those individuals can be prosecuted under the MDLEA. There is case law in, I believe, the Eleventh Circuit, which talks — where there was a question of whether or not there are different — there's a different analysis for individuals who are on land versus individuals who are on — or, sorry, individuals who are on a flagged vessel and individuals who are on a stateless vessel. Could you take us back a moment and tell us again what it is you think 70506 does for your argument here? 70506, Your Honor, is the conspiracy provision, at least under the version of the statute that's excerpted in the statutory framework. It may have changed since the briefing, but it's the conspiracy provision that says that a person attempting or conspiring to violate 70503 is subject to the same penalties. That's the same way that it's written in, for example, 963, saying that a person who conspires to violate a subsection of Title 21 is subject to the same penalties. That is how Congress chose to punish conspiracies for individuals who violate the MDLEA. But your argument that, therefore, it's clear that Congress intended for 70503 conspiracies to have U.S. jurisdiction? Yes, it is, Your Honor. That is for two reasons. One, if you just read the two provisions together, which is, one, that a violation of the MDLEA for the individuals on the boat is to apply extraterritorially, and we are also punishing those who conspire to do so. And one point on that, Your Honor, conspiracy has... You cited 70506 in your brief. Did I miss it? I mean, it's not in your table of contents. I believe, Your Honor, that we certainly cited the conspiracy provision of the MDLEA. All right. I don't want you to take up your time, though. I just... I'm sorry, Your Honor. On page 22 of our brief, 70506 in turn provides that a person attempting or conspiring to violate 70503... Thank you. Go ahead. Let me let you finish, and then I have a question. Sure. As a practical matter, Your Honor, conspiracy... There seems to be no dispute also in Appellant's brief that conspiracy applies to the individuals on the boat because there are prosecutions that have been upheld in all courts, time and again, that the individuals on the boat conspired to distribute the drugs while on board a vessel. So clearly, there has to be extraterritorial application of the conspiracy provision in order to prosecute somebody for conspiracy on the high seas. It follows by extension that it can also apply to people who do not get on the boat, both by reading the statute together and looking at Congress's intent through the legislative history. And what I would point to here are two things. First, I would note that in the Senate report, and this is cited in our brief, Congress was talking about, in the context of a predecessor statute, the fact that there was a loophole that was created by the difficulty in obtaining evidence about whether or not the drugs were destined for the United States. And in the Senate report, the Court noted the need for a law to prosecute, quote, the crew or others involved in the smuggling operation. And then the Senate report also noted that under the current version of the law, there were two distinct classes of individuals that they were looking to capture their conduct in this statute. So it didn't make it into the statute. Right. It didn't make it into the statute. But that's because it's clear that for conspiracy, the actions of co-conspirators is attributable to others, if it's reasonably foreseeable. Here, these defendants coordinated a shipment, knowing that it was going to be going on a boat onto the high seas. So it was headed toward Australia, wasn't it? That's correct. But it was getting there by boat. That's the point. But what is the nexus with the United States? So the nexus with the United States, Your Honor, is, there are several. First, I would just point out that because it was a stateless vessel, there should not be, there need not be a nexus to the United States. Bless you. Every court, I understand that that issue was under advisement in Vanderen before this court. That's quite true. Every court, every other circuit to look at the issue has said that there is no requirement for nexus for stateless vessels. And in Pinto Mejia and Enrique, this court endorsed the idea that there can be prosecutions of stateless vessels without a nexus to the United States. Here, however, there was a nexus. And if I may, I see my time is up, but if I may answer. Let's finish your thought. Thank you, Your Honor. The nexus to the United States here, there are several. First, if you just look at Congress's findings in 70501, which talks about the global instability that affects the United States from large-scale drug trafficking on the high seas, disrupting large-scale shipments is one way to reduce the impact of those organizations here in the United States. Here, however, there's even more of a specific nexus. And that is, as I mentioned at the outset, that there was a co-conspirator who was a furtherance of the conspiracy in the United States, both paying a confidential informant and having phone calls with other co-conspirators back in Columbia regarding what needed to be done in New York for purposes of obtaining the passports that would be used to allow members of the conspiracy to travel into Australia. Even if you don't need a nexus, you have one. Even if we don't need it, we have one here, Your Honor. And I would also just note that in EPSCAMP, for example, there, where everything took place outside of the United States, the court noted that there was a nexus because one of the undercover officer agents had flown to Miami to look into picking up an airplane that they could use, and the court said that would have been enough for a nexus. So certainly we have it here. Thank you. May I ask one question? I just want you to deal with our decision last year in Hoskins. You cited with a CF site as noting with approval the rule of other circuits that a conspiracy statute applies extraterritorially where the underlying substantive crimes do. But in fact, Hoskins said that the presumption against extraterritoriality bars the government from using conspiracy and complicity statutes. The Foreign Corrupt Practices Act, because of the statute's territorial limitations. Now, if I understand your adversary's argument, they want us to construe that opening line of the MDLEA about persons on the vessel as being a territorial limitation on the statute. So my question is, why doesn't Hoskins at least give pause as to whether we can apply it to anyone other than a person on board a covered vessel? Your Honor, I don't think that the language regarding on board is a territorial limitation. I understand that. How do you distinguish Hoskins, which because it only applied to agents and certain persons involved with the United States securities, we held couldn't be extended to persons who conspired with them? Because here, Your Honor, I think Congress's intent, which is borne out from the reason why they passed this statute, even if Hoskins gives pause, the fact that Congress clearly intended to reach individuals who were committing conduct on the high seas wherever they are is enough to overcome the pause that Hoskins would create. Because the practical limitation here, the practical effect, Your Honor, is that if Congress meant, Congress clearly saw drug trafficking on the high seas as a critical problem and sought to punish those individuals involved, but doing so in the way that the defendants suggest and reading that as a territorial limitation on, through the MDLEA to people on the boat would inoculate from liability the most culpable people who are involved in these drug transactions, the people who coordinate the shipments, who stand to profit from it, and would only then allow Congress to prosecute what essentially turns out to be impoverished fishermen who get on the boat and get interdicted, and that's a cost of doing business. So why would Congress put in the language while on board a covered vessel? Why wouldn't it be who, you know, no individual may knowingly or intentionally do certain things with respect to a covered vessel? Why would it have emphasized the on board aspect of it? Your Honor, for the same reason, so in the version of the statute that was in place at the time, the language is actually a little bit different. It's that no person may knowingly manufacture, distribute, possess on board a vessel subject to the jurisdiction of the United States. That is virtually identical to the way in which Congress passed the law with respect to 959, using a plane that is a U.S. registered plane. That limitation is still not, it's not a limitation on whether the person has to actually be on the boat. It's just describing that the conduct that's taking place, part of the conspiratorial conduct, has to be on a boat, otherwise, or has to intend that that's what's going to happen. And otherwise, that's what we'd get at the sort of backdoor, the backdoor universal jurisdiction over drug trafficking that Mr. Weinstein was talking about. Congress is not seeking to go into foreign countries and prosecute people for drug trafficking in all circumstances. It's only when they meet very specific tests. Here, where they use or intend to use vessels subject to the jurisdiction of the United States. In 959, when they intend to import the drugs to the U.S., or where they intend to send the drugs anywhere but using a U.S. registered plane. Thank you, Your Honors. This is Judge Winter. Could I ask a couple questions? I would like to inquire into the statelessness of this vessel, because so much in this case hangs on that. But there is, I am confused by the constant reference to photographic evidence. Now there was some photographic evidence in this case, but apparently there was not as much as the Ecuadorian government wanted. Is that correct? Yes, Your Honor. There were photographs and there was a video taken while the Coast Guard members were out conducting the interdiction. Did they, were all these presented to the Ecuadorian authorities? The photographs and the video were not, Your Honor. And if there's another, I can follow up on that, or if there's another question. Well, I am curious. Your brief makes an argument that I simply can't agree with. That is that the Ecuadorian response that it couldn't determine whether it was, whether the vessel was an Ecuadorian registry. That that led to an inference that it didn't need photos. Now, I don't think that follows. And I'm curious as to what the record shows as to why all the photographic evidence was not provided to Ecuador, and where and when the request for more photographic evidence came. Your Honor, our position is the vessel is stateless. The MDLEA does not set forth the particular types of information that need to be provided to a foreign country. Here, through the valid exchange of forms between the United States Coast Guard and Ecuadorian authorities, the Coast Guard, and Judge Gardefi lays this out, and it's at pages 88 and 89 of the appendix. The Coast Guard provided a wealth of information to Ecuadorian authorities to determine, to allow Ecuador to determine whether or not the vessel's master's claim of registry in Ecuador was valid. And that included the name of the vessel, the verbal claim of registry. I'm familiar with all that. When and where did the request for photos come from? The request for photos came during the exchange of forms. So the first form goes out from the United States with all of the information. The response comes back and says, we will answer within 30 minutes. The next form, then a response comes back asking for more information. The Coast Guard provides all the additional information that is set forth at 88 to 89, and the Coast Guard and Ecuadorian authorities responded and said, there are a number of vessels registered with the name El Vacon. We need photographs. There are no photographs that are sent at the time, and Ecuador responds that they cannot affirmatively confirm or deny, which is all that is required under the MDLEA. And to the extent that what the defendants are arguing is that the government, is that the Coast Guard actually violated a bilateral treaty between the United States and Ecuador concerning the exchange of forms, that is not an argument that is available to them under the MDLEA's plain language and the general, well-established principle that individual defendants cannot step into the shoes of another country to assert violations of international law and international treaties. The point I would make here, Your Honor, and I think this flows from your... Nothing is majorly changing the subject. To prevail in this court, you have to show it was a stateless vessel. Ecuador requested photographs, and you're telling me they weren't sent. That's right, but Ecuador then chose to make the ultimate determination. Ecuador could have said, we are not responding. Yes, or it could have said, maybe it meant, well, without the photographs, we can't say whether it's of Ecuadorian registry. Right, but the point is that it's Ecuador's decision whether to respond to the forms, when they responded with the final form, because the statute... But it's our decision as to whether it's a stateless vessel. And under the MDLEA... And we're supposed to go solely on what may be a totally uninformed decision by a foreign country? Your Honor, this is not a totally uninformed decision. I agree with that, but they did ask for more information, and you did not, and the Coast Guard did not provide it. Right, and to be fair, Your Honor, it would have been futile had the Coast Guard provided it. There was no additional information that would have been in a photograph. They asked for a picture. Right, but there's no additional information that would have been captured in that photograph that was not already provided to Ecuador in the exchange of information, again, that's set forth in the record in Judge Gardafi's findings. The MDLEA requires that when there is a claim of registry, the Coast Guard is to follow up with that country. The country then makes a decision whether to respond. Ecuador did respond here. They chose to respond. That satisfies the requirements of the MDLEA, and... Well, you're talking around it. The language I understand you to be relying on is that it's a stateless vessel if the claimed nation does not affirmatively and unequivocally assert that the vessel is of its nationality. Is that the part you're relying on? That's correct, and that's what Ecuador... So you're saying that Ecuador's saying we need more information, otherwise we can't our vessel is not an affirmative and unequivocal assertion. Now, do you not suggest that at a minimum you have to have acted in good faith when they gave you that answer? Your Honor, I think... You couldn't go to Ecuador and go, we've got a vessel in the middle of the Atlantic. Is it yours? Period. You couldn't do that and say... And Ecuador comes back and says, darned if we know. That would not be enough to have acted in good faith here, would it? Your Honor, that hypothetical does not seem like good faith, but that is not what happened in this case. I understand that, but in trying to piece together what your obligations were, do you at least have to make a good faith inquiry of the foreign state? And now your argument is that given everything else you gave them, not giving them pictures was not a demonstration of bad faith. Your Honor, I can't say whether there is a limitation over what is required in the statute. All I can say is that with respect to this case, which is before the court, the court need not reach the question of whether or not there is some additional good faith requirement because here, the Coast Guard provided ample information that allowed Ecuador to make a determination and if Ecuador did not believe it had sufficient information, it could have refused to comply and it could have asserted that through diplomatic channels both at the time... But it did. It did say you hadn't provided... Ecuador did say you didn't provide the information that it needed. It just asked whether there were photographs because there were other vessels named the already provided showed everything that would have been in the photographs, what the color of the vessel, what was on the hull, what the home port was, the length of it, the names of the people on it, where they were from, what their registration numbers were, all of the information that would have been on the boat. And this is not a case, for example, in Prado there was concern that, well, there were potentially registration numbers that were not provided to Columbia and the boat was sunk. Here, there is no claim there were registration numbers and, in fact, there were none. The Coast Guard acted much more professionally than they did in Prado. I will concede that. And so here, our position would be all of the information that was provided was ample information for Ecuador and to the extent there is a challenge to that, it is Ecuador's to make, not the defendant's. I don't understand this challenge argument. The basis for your being in this court, which is a court of the United States of America, is that this was a stateless vessel. And now you're saying that we have to look totally to Ecuador and Ecuador's statement is binding a promise. That may be true in some circumstances under the statute, but Ecuador asked for further evidence and you didn't provide it. Now, as I understand your argument now, you're now saying that's harmless error, as well as not for us to question it. I think we also set forth that position in the brief, too, and we raised that argument in the district court, which is, again, yes, Ecuador asked for photographs. Yes, the Coast Guard was not able to provide photographs, but they provided all of the information, all of the other information that they had and all of the information that would have been- Why do you say was not able? Was not able to provide additional photographs? They had. You previously admitted they didn't provide all the photographs they had. No, they did not. They did not provide the photographs and the- they have not provided the photographs and the video that was taken in real time while they were on the vessel. That is correct. But the information that would have been captured in that was provided through the exchange of forms. That satisfies the MDLEA for purposes of proving that this vessel is stateless. Okay. Thank you. Thank you. Mr. Weinstein, I thought I asked you before whether you contest that this was a stateless vessel. You don't. Your Honor, I don't believe you asked me that question. Mr. Sanchez has preserved that issue from the district court to this court and argued in his brief that the proof was inadequate on this being a stateless vessel. That is the position we took in our brief, and we did not have the benefit of Prado, which it seems- With subsection C, in which it's defined as a vessel aboard which the master makes a claim of registry and for which the claimed nation does not affirmatively and unequivocally assert that the vessel is of its nationality. I mean, it seems to be a definition that requires affirmative action by the vessel that the master has claimed is its home. How do you deal with the statutory definition? If I understand Your Honor's question, this is a different case from Prado because, indeed, in this case, the government authorities did ask, and there was an affirmative representation, and so there was back and forth on that question. With respect to the language of the- But what has to come back, again, we're dealing with the statutory definition. We're not dealing with what we might like to see here. The statutory definition says you go to the claimed nation, and if they don't affirmatively and unequivocally assert that it's their vessel, then it's stateless. Isn't that what happened here? Your Honor, having the benefit of Prado and the questions asked the government, I would submit that on this record there is insufficient evidence that the government was careful enough in responding to the inquiry of the Ecuadorian authorities. Well, certainly they asked and provided some information. Where would we look for what more the government has to do than what it should do? I would urge the Court on the facts of this case that an inquiry having been made and the response being that they were looking for rather specific additional information, which it seems from the record the government possessed, that on these facts it would be appropriate for the Court to find that the government didn't make a sufficient effort and does not have evidence to meet its burden. Do you agree that if they provided the photographs there would be no further facts helpful to your client that would have come to the Ecuadorian's attention? I'll only suggest that I don't have in mind the specific language of the Ecuadorian request, but if they fulfilled the Ecuadorian request for further information, I agree that the record would be considerably weaker for me on this point. Well, I'm trying to understand where we're going here with your argument. If the Ecuadorian response had been, we can't tell whether it's registered in our state without it being taken into action, please take it to our court. Are you suggesting that that would have been required by the federal law? I can appreciate that that may indeed be a request too far. I will say on the facts of this case where there was readily available information of the type sought, that being photographic evidence, for the authorities to simply ignore that and go ahead and declare it a stateless request. How would it have made a difference? I mean, that's almost what Judge Wood called the harmless error theory here. How would it have made a difference? I'm going to suggest that, again, thinking about the facts of Prado, in Prado the court said, well, they didn't ask, they couldn't put forward the proof, this was a failure of proof. It seems to me that although my record is weaker, it is still a record on which I can all things considered, the government did not act perhaps with sufficient good faith or with sufficient diligence and therefore was not able to put forward the kind of proof it needed to. That's not a question that in my mind translates to, we can't show that it would have been any information favorable. Would I be wrong in drawing that conclusion? Oh, I'm sorry, Your Honor. I have to say, honestly, on this record and given my understanding of the case, I simply do not know whether in fact it would have turned out that the vessel was obviously registered in Ecuador. Now would you address the government's argument that even if this was an error, it's an argument that only Ecuador can raise? Thank you. Thank you, Your Honor, because while I appreciate the point that the government makes, and there are aspects of this argument about international comedy that the defendant may not raise, and that is a well-established principle, again, I'm going to rely upon Prado for the proposition that a defendant has the right to insist on putting the government fully to its proof of statelessness and that the proof here was inadequate, that there is a branch of these rights that are between the governments, and I appreciate that point. But Prado, it seems to me, if I understand the case, stands for the proposition that a defendant may still insist upon the proof to which that defendant is entitled with respect to statelessness in the district court. I had hoped to make a comment about another aspect. You can take your one minute on the point you wanted to make. Thank you, Your Honor. I just want to go back to the point about 70506 and the conspiracy provision. I just want to note two things. First, in our reply brief, we collect all of the 70506 conspiracy cases we could find. I note that the provision has long been used to prosecute other people on the boats who are not directly, where there's no direct theory of liability, but where there is conspiratorial liability. I want to make the second point that this case does represent a significant extension of the use of the Maritime Drug Law Enforcement Act. The government makes it seem as if using conspiracy to extend its reach is a rather ordinary matter. I submit to the court that at least in the reported cases, there are no other instances like this, and urge the court to restrain the government. Perhaps I get a little that I say that even the Southern District of New York doesn't have jurisdiction over all people in all places. Thank you, Your Honor. Thank you very much. We'll reserve the decision. A lively argument.